# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC SUBER and MARY LYNNE FORREY-SUBER, on their own behalf and on behalf of all others similarly situated,<br><br>        Plaintiffs,2<br><br>           v.<br><br>Liberty Mutual Insurance Group, Inc., d/b/a Liberty Mutual Insurance, Liberty Mutual Insurance Company, Safeco Insurance Company of America, and LM General Insurance Company,<br><br>        Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

## I.    INTRODUCTION

1.      This action is brought by Plaintiffs, Eric Suber and Mary Lynne Forrey-Suber, pursuant to Fed. R. Civ. P. 23, on their own behalf and on behalf of all other persons similarly situated for damages arising from Defendants' wrongful pattern of denying auto insurance coverage to a specific class of accident claimants in violation of their own policy terms.

2.      Specifically, the Plaintiffs were denied coverage for property damage from an accident that occurred at a High-Performance Driving Education ("HPDE") course under a policy exclusion pertaining to racing, when it is undisputed in the insurance world that HPDE events are **not** racing.

3.      HPDE courses and educational events are designed by instructors to teach techniques and maneuvers to car owners and driving enthusiasts who seek to drive their own

4.    automobile on a closed track, safely, under professional supervision, and without fear of getting a ticket.

5.    HPDE courses and events are not racing contests, nor are they practice for racing competitions.

6.    The illegal scheme here—systematic denial of otherwise eligible claims—is evident from the broader context that reveals how insurance companies write policies to specifically address coverage exclusions for property damage from activities such as racing, driving on racetracks, and attending HPDE events. To wit, for years it has been common for an insurance policy to contain clear language regarding coverage for racing, for an HPDE event, or for any accident occurring on a track.

7.    The Defendants in this case unlawfully denied coverage to the Plaintiffs, as well as other class members, whose policies do not contain any HPDE-exclusionary language at all.

8.    The subject policies were not intended to exclude coverage for accidents occurring at HPDE events—yet for years, Defendants have routinely and systematically denied coverage for property damage from accidents that occurred during HPDE courses, to the extreme financial detriment of Plaintiffs and members of the Classes, as described in more detail below.

9.    As a result of Defendants' bad faith conduct, Plaintiffs have been forced to commence the present litigation on behalf of themselves and the proposed Classes.

## II.    **THE PARTIES**

10.    Plaintiffs, ERIC SUBER and MARY LYNNE FORREY-SUBER (collectively referred to as the Subers or "Plaintiffs"), are adult individuals residing at 1442 Woodview Road in Yardley, PA 19067.

11.    Defendant, Liberty Mutual Insurance Group, Inc. d/b/a Liberty Mutual Insurance, is a Massachusetts corporation with a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116 and is duly licensed to sell and administer insurance in the Commonwealth of Pennsylvania.

12.    Defendant, Liberty Mutual Insurance Company, is a Massachusetts corporation with a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116 and is duly licensed to sell and administer insurance in the Commonwealth of Pennsylvania. Upon information and belief, Liberty Mutual Insurance Company is a subsidiary of Liberty Mutual Insurance Group, Inc. d/b/a Liberty Mutual Insurance.

13.    Defendant, Safeco Insurance Company of America, is a Washington corporation with a principal place of business at 1001 4th Ave, Seattle, Washington 98185 and is duly licensed to sell and administer insurance in the Commonwealth of Pennsylvania. Upon information and belief, Safeco Insurance Company of America is a subsidiary of Liberty Mutual Insurance Group, Inc. d/b/a Liberty Mutual Insurance.

14.    Defendant, LM General Insurance Company, is a Massachusetts corporation with a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116 and is duly licensed to sell and administer insurance in the Commonwealth of Pennsylvania. Upon information and belief, LM General Insurance Company is a subsidiary of Liberty Mutual Insurance Group, Inc. d/b/a Liberty Mutual Insurance.

15.    Liberty Mutual Insurance Group, Inc. d/b/a Liberty Mutual Insurance, Liberty Mutual Insurance Company, Safeco Insurance Company of America and LM General Insurance Company issue policies of insurance within the Commonwealth of Pennsylvania and in this

judicial district. These defendants are collectively referred to herein as "Liberty Mutual" and/or "Defendants."

16.    At all times material hereto, Defendants were acting by and through duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer.

## III.    JURISDICTION

17.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendants.

18.    The Court has personal jurisdiction over Defendants because at all relevant times Plaintiffs have been citizens of the Commonwealth of Pennsylvania and their insurance policy was written in Pennsylvania. Defendants have transacted, solicited, and conducted business in Pennsylvania through employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

19.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here and regularly conduct business in the Eastern District of Pennsylvania, because Plaintiffs reside in this district and their transaction at issue occurred in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## IV.    INDIVIDUAL PLAINTIFFS' CAUSE OF ACTION

20.    Defendants, in their regular course of business, issued to Plaintiffs a policy of insurance ("Plaintiffs' Policy"), bearing policy number AOS28814822840. A true and correct copy of Plaintiffs' Policy is attached hereto and incorporated herein as Exhibit "A."

21.    In 2021, Plaintiffs added a 2021 Porsche 718 (the "Subject Vehicle") to their existing policy, which was in effect from August 22, 2020 to August 22, 2021. A true and correct copy of the Endorsement page for Plaintiffs' Policy is attached hereto and incorporated herein as Exhibit "B."

22.    Plaintiffs faithfully paid policy premiums to Defendants, specifically to provide, among other things, coverage for damage to the Subject Vehicle.

23.    Among the Exclusions listed in Part D of Plaintiffs' Policy was the following provision at paragraph 15:

> Loss to your **covered auto** or any **non-owned auto** while the car is being used for:
>
> a. Competing in; or
>
> b. Practicing or preparing for
>
> any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

*See* Exhibit "A" (emphasis in original).

24.    On or about April 2, 2021, while Plaintiffs' Policy was in full force and effect, Plaintiff was participating in an HPDE event at New Jersey Motorsports Park in Millville, NJ when he got into an accident that resulted in damage to the Subject Vehicle.

25.    Notice of this covered loss was given to Defendants in a prompt and timely manner and Plaintiffs, at all relevant times, fully complied with all of the terms and conditions required by Plaintiffs' Policy.

26.    The estimated damage to the Subject Vehicle was in excess of $40,000.

27.    Plaintiffs informed Defendants that the accident occurred while Plaintiff was participating in an HPDE event organized by the Motorsports Enthusiasts HPDE ("MoE HPDE") of Cherry Hill, New Jersey.

28.    Plaintiffs produced to Defendants a copy of a letter from MoE HPDE, which stated that the event on April 2, 2021 "was a car control clinic, with participants driving under supervision by our trained staff." The letter further stated: "This was not a practice for any type of racing event or other competition." A true and correct copy of the MoE HPDE Letter is attached hereto and incorporated herein as Exhibit "C."

29.    During Defendants' investigation of Plaintiffs' insurance claim, Defendants repeatedly mis-characterized Plaintiff's participation in the MoE HPDE event as "racing."

30.    For example, during a recorded phone call interview on April 12, 2021, Defendants' Special Investigator James Strysko interrogated Plaintiff Eric Suber without the presence of counsel, as follows:

> Q:    OK. New Jersey Motorsports Park consists [sic] itself as a racetrack. A closed-circuit racetrack per their website. In which they [crosstalk] rent out the racetrack to multiple people, to private and public for racing events.
>
> A:    Well, it, it's for all kinds of different events. It isn't, it isn't primarily for racing events.
>
> Q:    OK. So you wouldn't consider driving your vehicle at 125 miles an hour around a racetrack considered racing?
>
> A:    Now, I, I know people that have driven their cars at 135 miles an hour on the New Jersey Turnpike. That doesn't mean they're racing. Just because they're going a certain speed.
>
> . . .

A:    My point is that a, a, a particular speed does not define racing.

. . .

Q:    OK. So what do you consider this course? If it's not racing, what is it considered?

A:    It's a car control clinic. You can also consider it to be, you know, driver's education.

Q:    But there's no instruction, uh, being given? There's nobody inside of your vehicle with you giving you instruction?

A:    Well, there doesn't need to be somebody in, in the vehicle to give instruction when we're talking about things in the classroom. And also one on one, you know, outside the classroom.

Q:    OK. I've reviewed the Thunderbolt session from April 2nd, as well as the session that you attended prior. There's multiple videos on YouTube. I'm not sure if you're aware of that. I've reviewed those videos. I've consulted with our team of Underwriting. It is a racing session. . . .

A true and correct copy of the Transcript is attached hereto and incorporated herein as Exhibit "D."

31.    As is clear from the Transcript at Exhibit "D," Special Investigator Strysko's questions were not designed to obtain information about the accident; rather, he attempted to solicit from the insured an *admission* that he was in fact engaged in racing. Mr. Suber was adamant, however, that he was *not* racing or practicing for racing or any related activity.

32.    Following Defendants' self-serving and biased investigation, which distorted the nature of Plaintiffs' activities, on or about April 16, 2021, Defendants wrongfully denied Plaintiffs' claim for insurance coverage. A true and correct copy of this denial letter is attached hereto as Exhibit "E."

33.    The denial letter stated that the denial was based on the Racing Exclusion contained in Part D at Paragraph 15 of Plaintiffs' Policy. *See* Exhibit "E."

34.     Based on information and belief, the Defendants have accepted the policy premiums with no intention of providing any coverage for vehicle damage suffered during an HPDE event.

35.     Despite knowing that this HPDE event was not a race or racing activity and being told the same by Plaintiffs as well as an independent third party, Defendants still denied this loss.

36.     Thereafter, Defendants continued to unlawfully conflate HPDE events with racing when Defendants subsequently refused to renew Plaintiffs' Policy on the grounds that "[a] review has determined there is unacceptable use of the vehicle(s) listed on this policy. Vehicles used for high performance driving, and or racing." A true and correct copy of the non-renewal Letter is attached hereto and incorporated herein as Exhibit "F."

37.     Following the denial of coverage in April/May 2021, Plaintiffs contacted counsel to assist in the loss.

38.     On May 19, 2021, Counsel Steven Gillman, Esq. wrote a letter to Liberty Mutual requesting to have the claim reopened and providing notice that the MoE HPDE had nothing to do with any type of racing activity or practicing for a racing activity.

39.     On August 17, 2021, Liberty Mutual responded through Counsel John C. Sullivan, Esq. of Post & Schell, P.C. that the denial was proper pursuant to the Racing Exclusion contained in Part D at paragraph 15 of Plaintiffs' Policy. A true and correct copy of the Sullivan Denial Letter is attached hereto and incorporated herein as Exhibit "G."

## V.     DEFENDANTS HAVE KNOWN FOR YEARS THAT HPDE EVENTS AND RACING ARE SEPARATE CATEGORIES OF AUTO INSURANCE COVERAGE

40.     Defendants have known for years that there is a material difference between HPDE events and racing events for insurance coverage purposes.

41.    By the late 1990s, auto insurance companies started using policy language that explicitly excluded losses arising out of participation in high performance driving at a track.

42.    The below excerpt, from an article titled, "Car Insurance May Not Cover You at the Track," published in the *New York Times* more than thirteen years ago on October 17, 2008, demonstrates the evolution of this issue in the auto insurance industry:

> IT'S no secret that insurance companies don't like the people they cover to drive fast. So it shouldn't be a surprise that the industry has been removing a policy loophole that insured drivers on racetracks.
>
> That has left weekend warriors uninsured if they participate in track days or attend high-performance driving schools. Jerry Kunzman, executive director of the National Auto Sport Association, said that participation at its track events had jumped fivefold since 2003 and that many of those drivers had no idea they were not covered.
>
> . . .
>
> What's happened is that many insurers have redefined the term "racing." Policies have long had exclusions for racing, but it was defined as a "timed event."
>
> High-performance driver education neatly avoided that definition. Although cars may take laps at top speed, they aren't timed.
>
> At many schools, including those held by the Porsche Club of America and the BMW Car Club of America, students are required to attend classroom sessions. On the track, drivers get one-on-one tutoring from an instructor under controlled conditions. The cars are generally sent around the track in small groups with passing limited to straightaways —and only when the driver being passed signals that doing so is all right. So because these runs were not timed, many drivers were covered by their normal automobile policies.
>
> That loophole did not escape the attention of insurers — some clubs practically taunted them in their newsletters. "There was a period of time when clubs were openly flouting this. 'Take driver's education and your insurance will cover you. Drive your car the way it was meant to be driven,'" said McKeel Hagerty, chief executive of the Hagerty Insurance Agency, an automotive specialty insurer.

> **So the industry began to add a new exclusion to its policies in the late 1990s, with most companies adding it within the last few years. Instead of trying to define racing, policies exclude damage at any location that could accommodate racing, timed or not. That eliminated coverage during high-performance driving schools and track days.**

Roy Furchgott, *Car Insurance May Not Cover You at the Track*, N.Y. TIMES, Oct. 17, 2008 (emphasis added), *available at* https://www.nytimes.com/2008/10/19/automobiles/19INSURE.html (last visited October 20, 2021).

43.    Another concrete example of the historical practice in the auto insurance industry to unambiguously write policies that excluded coverage for HPDE events and/or damage that occurred on racetracks is found at *Hines v. Camper*, No. 2-11-31, 2012 WL 3893764, at *1 (Ohio Ct. App. Sept. 10, 2012), where the Court analyzed an Allstate policy in connection with a drag race that occurred on May 14, 2010. *Hines*, 2012 WL 3893764, at *1. *Hines* is significant because the Allstate policy in effect in 2010 excluded coverage for damages arising from "***use of an auto at a track or course designed for racing or high performance driving . . . .*" *Id.* (emphasis added)).

44.    Based on what Defendants actually knew, and based on what was commonly known by all in the auto insurance industry about how policy language affected coverage issues for property damage occurring at HPDE events, the Defendants clearly had the knowledge, ability, and capacity to use policy language that explicitly excluded losses arising out of participation in high performance driving at a track.

45.    If Defendants intended to apply the Racing Exclusion found in Part D at paragraph 15 of Plaintiffs' Policy so broadly as to cover high-performance driving events, they could ***EASILY*** have done so in their policy language, but they did not.

46.     Defendants, despite the demand for benefits under Plaintiffs' Policy, have refused, without legal justification or cause, and continue to refuse, to pay to Plaintiffs monies owed for the damages suffered as a result of the loss.

47.     As a direct and factual result of Defendants' breach of contract, Plaintiffs have been denied the benefits of their bargain with Defendants.

48.     Solely as a result of the failure and refusal to pay benefits to Plaintiffs as required under Plaintiffs' Policy, Plaintiffs have suffered loss and damage in an amount in excess of $40,000.

## VI.     CLASS ACTION ALLEGATIONS

49.     This action is being brought by Plaintiff as a Class Action pursuant to Federal Rule of Civil Procedure 23, on Plaintiffs' own behalf and on behalf of a class of persons to which they belong as defined below.

50.     Members of Plaintiffs' Class are defined as follows:

**Nationwide Class**:

> All nationwide automobile insurance policyholders of Liberty Mutual and affiliates whose Policy contains the Racing Exclusion and who satisfy the following requirements:
>
> (a) the policyholder made a claim for property damage coverage arising from an accident that occurred at or during an HPDE event;
>
> (b) the claim falls within the Settlement Class Period; and,
>
> (c) the claim was denied pursuant to the Racing Exclusion.

**Pennsylvania Sub-Class**:

> All Pennsylvania automobile insurance policyholders of Liberty Mutual and affiliates whose Policy contains the Racing Exclusion and who satisfy the following requirements:

11

(a) the policyholder made a claim for property damage coverage arising from an accident that occurred at or during an HPDE event;

(b) the claim falls within the Settlement Class Period; and,

(c) the claim was denied pursuant to the Racing Exclusion.

The term "Racing Exclusion" refers to the provision found in the Exclusions section, Part D. at paragraph 15 of Plaintiffs' Policy, *see* Exhibit "A," as well as any similarly worded exclusion that purports to exclude racing activities but does not mention or reference high-performance driving events or courses. The term "Policy" refers to any automobile insurance policy of Liberty Mutual and/or its affiliates that contains a "Racing Exclusion" as that term is defined herein. The term "Settlement Class Period" refers to the maximum amount of time allowed to sue for breach of contract, unfair trade practices, unfair insurance practices, or other statutory violation in the applicable jurisdiction where the class member's policy was purchased.

51.    The Classes will not include policyholders of Liberty Mutual or a Liberty Mutual affiliate whose insurance claims, as of the date of the Preliminary Approval Order:

(a) remain open according to the insurer's records;

(b) are the subject of an assignment of rights to payment by the policyholder to any third party;

(c) are the subject of a pending lawsuit, other than this Civil Action, against the insurer;

(d) are the subject of a final judgment in a lawsuit against the insurer or a release executed by the policyholder(s) in favor of the insurer; and/or

(e) are the subject of an ongoing or completed appraisal proceeding under the terms of an appraisal provision in a Policy.

52.    Upon information and belief, the Classes contain in excess of 100 policyholders located throughout the United States of America.

53.     The claim of Plaintiffs as representative parties is typical of the claims of the Classes, including, but not limited to the following:

a.     A Class of persons insured under a Policy that excludes coverage for racing, but not HPDE events, who have suffered covered property damage or loss to their personal property where the portion of the Policy, advertised as a Racing Exclusion, has been overbroadly interpreted to exclude coverage for vehicle damage that occurs at HPDE events.

b.     The misrepresentations, practices and policies of Defendants are typical of the Classes;

c.     Plaintiffs and members of the proposed Classes have all been harmed by similar or identical conduct;

d.     The injuries suffered by Plaintiffs are typical of other members of the Classes.

54.     There are questions of law or fact common to the Classes, including, but not limited to the following:

a.     Plaintiffs and all members of the Classes have been issued a Policy, which included a Racing Exclusion;

b.     Plaintiffs and all members of the Classes have suffered covered property damage loss to insured property;

c.     Plaintiffs and all members of the Classes have been refused payment based upon Defendants overbroadly interpreting the Racing Exclusion to also exclude coverage for vehicle damage that occurs at HPDE events;

d.      Defendants have breached Policies that include a Racing Exclusion that were issued to Plaintiffs and members of the Classes by overbroadly interpreting the Racing Exclusion to also exclude coverage for vehicle damage that occurs at HPDE events;

e.      Defendants have acted in bad faith by overbroadly interpreting the Racing Exclusion contained in the Policies to also exclude coverage for vehicle damage that occurs at HPDE events; and,

f.      Defendants' overbroad interpretation of its own policy terms is deceptive thereby violating Pennsylvania's Consumer Protection Law and other similar statutes nationwide.

55.     The interest of the Classes will be fairly and adequately asserted and protected by the representative parties and their counsel. First, Plaintiffs have no conflict of interest in the maintenance of the Class Action. Second, Plaintiffs' attorneys have more than 35 years of combined experience in handling and litigating complex insurance coverage disputes and bad faith claims.  Third, Plaintiffs' attorneys have considerable Class Action experience.  Finally, sufficient financial resources are available to assure that the interests of the Classes will be protected.

56.      Adjudicating this controversy as a Class Action would be the fairest and most efficient method of resolution. Due to the large number of policyholders who have suffered identical losses, joinder would be impractical. Further, the prosecution of separate claims would most likely create varying or inconsistent adjudications and incompatible standards of conduct. Lastly, common questions of law and fact predominate over any issues involving only individual Class members.

**V.      CAUSES OF ACTION**

**COUNT I**
**BREACH OF CONTRACT**

57.    Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as though fully set forth hereinafter at length.

58.    Defendants are obligated by the terms of the Policies to indemnify the losses of the Plaintiffs and the Classes.

59.    Defendants have breached the Policies issued to Plaintiffs and members of the Classes by overbroadly interpreting the Racing Exclusion to also exclude coverage for vehicle damage that occur at HPDE events.

60.    Despite submission of reasonable proof and demand for full and complete payment with respect to Plaintiffs' loss, Defendants have not paid to Plaintiffs or the members of the Classes all of the policy benefits to which they are entitled under their respective Policies and have refused to provide funds sufficient to bring Plaintiffs' automobiles and the automobiles of the Class Members to pre-loss condition.

61.    Defendants' denial of coverage was made without a reasonable basis in law or fact.

62.    By reason of Defendants' breach of contract, Plaintiffs and members of the Classes have not received proper indemnification under their respective Policies.

63.    Defendants' refusal to indemnify the losses of Plaintiffs and the members of the Classes constitutes a breach of their respective insurance contracts.

64.    As a consequence of the Defendants' pattern and practice of repudiating their contractual obligations, Plaintiffs have been deprived of their contractual rights to receive benefits payable under Plaintiffs' Policy.

65.    As a further consequence of Defendants' Breach of the Policy, Plaintiffs have incurred and will continue to incur counsel fees, litigation costs and expenses, and loss of use of the benefits payable to them under the policy.

66.     Defendants have also breached the policies of other class members similarly situated to Plaintiffs who were wrongfully denied insurance coverage pursuant to a Racing Exclusion for property damage that occurred during HPDE events.

WHEREFORE, Plaintiffs and the Classes demand judgment against Defendants in an amount in excess of $5,000,000.00, together with interest and court costs.

### COUNT II
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AND OTHER SIMILAR STATUTES NATIONWIDE

67.     Plaintiffs incorporate by reference herein the facts and allegations set forth in the foregoing paragraphs as fully as though same were here set forth at length.

68.     Defendants, acting by and through their duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer, made material misrepresentations of fact concerning the nature and quality of the Policies for the sole purpose of inducing justifiable reliance by Plaintiffs and members of the Class in paying the premiums for a policy of insurance which Defendants represented would protect Plaintiffs' and the members of their classes' interests in their automobiles, when Defendants knew that these representations were false, fraudulent and misleading. Defendants therefore have violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. §§ 201-1, *et seq.*, and other similar state statutes nationwide.

69.     Plaintiffs and members of the classes have suffered ascertainable losses of money, in the form of withheld insurance benefits for property damage losses, as a result of various unfair and/or deceptive acts or practices by Defendants, including but not limited to the following:

a.     Representing that the Policies have provisions, characteristics, uses or other benefits or, lack thereof, that, in fact, they did not have;

16

      b.      Advertising the Policies with the intent not to provide the full coverage detailed therein;

      c.      Advertising the Policies with the intent not to supply reasonably expected benefits;

      d.      Failing to comply with the terms of guarantees and/or warranties given to Plaintiffs prior to, at the time of, and after, Plaintiffs' purchase of the Policy; and,

      e.      Engaging in the aforementioned fraudulent and/or deceptive conduct which created a likelihood of confusion and misunderstanding.

70.    Plaintiffs and members of the Classes justifiably relied upon the material misrepresentations made by Defendants concerning the nature and quality of their Policies and, as a result of such reliance, suffered those damages and losses set forth above.

WHEREFORE, Plaintiffs and the Classes demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

### COUNT III
### BAD FAITH

71.    Plaintiffs incorporate by reference herein the facts and allegations set forth in the foregoing paragraphs as fully as though same were here set forth at length.

72.    Defendants have engaged in bad faith conduct toward Plaintiffs and the classes with respect to their overbroad interpretation of the Racing Exclusion and failure to indemnify Plaintiffs and the classes for their covered losses in violation of common law and 42 Pa. C.S.A. §§ 8371 *et seq.* and other similar state statutes nationwide.

73.     In furtherance of their bad faith and wrongful denial and refusal to pay benefits for Plaintiffs' and the Classes' covered losses, Defendants acting by and through their duly authorized agents, servants, workmen or employees, have engaged in the following bad faith conduct:

a.      interpreting the Racing Exclusion to apply to property damage that occurs at or during HPDE events;

b.      selling Policies that purport to cover property damage that occurs at or during HPDE events with the knowledge and belief that the coverage would never be applied to such property damage;

c.      misleading Plaintiffs and the class into believing that they had coverage for property damage that occurs at or during HPDE events while never intending to cover any such property damage;

d.      interpreting the Racing Exclusion portion of the Policy in an overbroad fashion so that the exclusion wrongfully applies to property damage that occurred at or during HPDE events;

e.      misrepresenting to Plaintiffs and the Classes that they are being provided coverage when in fact such coverage does not exist, when Defendants knew, or in the exercise of reasonable care should have known, that such misrepresentation was wholly without legal or factual basis;

f.      unnecessarily and unreasonably compelling Plaintiffs and the classes to institute this lawsuit to obtain policy benefits for a covered loss which Defendants should have paid promptly and without the necessity of litigation;

g.      unreasonably withholding a benefit due and owing under a Policy; and,

h.      acting unreasonably and unfairly in response to claims.

18

74.    Defendants' action in interpreting the Policies to exclude coverage for property damage that occurs at HPDE events is frivolous and unfounded.

75.    Defendants' improper limitation of this benefit was done without any reasonable basis in law or fact and in reckless disregard of Defendants' fiduciary responsibility to treat Plaintiffs and members of the Classes in a fair and impartial manner.

76.    Finally, Defendants' conduct was motivated by financial self-interest and was accomplished with reckless indifference to the rights of Plaintiffs and members of the Classes.

77.    For the reasons set forth above, Defendants have acted in bad faith and in violation of common law and 42 Pa. C.S.A. § 8371, and other similar state statutes nationwide, rendering Defendants liable for statutory damages including interest from the date the claim was made in an amount equal to the prime rate of interest plus 3%, court costs, attorney's fees, punitive damages and such other compensatory and/or consequential damages as are permitted by law.

78.    The practice of Defendants in overbroadly interpreting the Policies to exclude coverage for property damage that occurs at HPDE events has been perpetrated by Defendants maliciously and in conscious disregard for the rights of policyholders solely for the financial advantage of Defendants thereby rendering Defendants liable for punitive damages.

79.    Defendants have engaged in bad faith conduct toward Plaintiffs and members of the Classes and have treated Plaintiffs and members of the Classes unreasonably with respect to the payment of benefits for their covered losses in violation of common law and 42 Pa. C.S.A. § 8371 and other similar state statutes nationwide.

80.    As a result of Defendants' bad faith conduct, Plaintiffs have been forced to commence the present litigation on behalf of themselves and the class and have incurred and will incur costs, expenses and counsel fees.

WHEREFORE, Plaintiffs and the Classes demand judgment against Defendants for compensatory damages including costs, counsel fees, interest, punitive damages and such other relief as the Court may deem equitable and just.

### COUNT IV
### DECLARATORY RELIEF

81.     Plaintiffs incorporate by reference herein the facts and allegations set forth in the foregoing paragraphs as fully as though same were here set forth at length.

82.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Principal Life Ins. Co. v. Minder*, No. CIV A 08-5899, 2009 WL 1917096 (E.D. Pa. July 1, 2009); *Miller v. Liberty Mut. Grp.*, 97 F. Supp. 2d 672 (W.D. Pa. 2000).

83.     An actual controversy has arisen between Plaintiffs and the Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that the Defendants contend and Plaintiffs dispute and deny that:

a)     Participating in an HPDE event is "Competing in" racing;

b)     Participating in an HPDE event is "Practicing or preparing for" racing;

c)     Participating in an HPDE event is the same as or equivalent to "any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay";

d)     Losses incurred while participating in an HPDE event are excluded from coverage;

e)      The language of the Racing Exclusion precludes coverage for losses incurred while participating in an HPDE event; and,

f)      The Policy does not include coverage for losses incurred while participating in an HPDE event.

84.    Resolution of the duties, responsibilities and obligations of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

85.    Plaintiffs seek a Declaratory Judgement to determine a) through f) above, as defined in the Policy.

86.    Plaintiffs further seek a Declaratory Judgement to affirm that losses incurred while participating in an HPDE event are not excluded by the Racing Exclusion.

87.    Plaintiffs further seek a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff.

WHEREFORE, Plaintiffs and the Classes demand declaratory judgment against Defendants that coverage exists in these circumstances.

## VI.    <u>REQUESTED RELIEF</u>

The following relief is requested by Plaintiffs and members of the Classes:

a.      Certification of this case as a class action;

b.      Appointment of Plaintiffs as representatives of the Classes and the undersigned as Class Counsel;

c.      Preliminarily and thereafter permanently enjoining the Defendants from engaging in the acts described herein;

       d.      Compensatory damages to Plaintiffs in the amount of money due as a result of Defendants overbroadly interpreting the Racing Exclusion in the Polices to also exclude coverage for damage that arose from accidents that occurred at HPDE events, and such compensatory damages to each member of the Classes in an amount to be determined, including interest on said amounts for Plaintiffs and members of the Classes;

       e.      Damages pursuant to common law and Pennsylvania's Bad Faith Statute 42 Pa. C.S.A. § 8371 and other similar state statutes nationwide;

       f.      For a declaration that that coverage exists in these circumstances, that the Racing Exclusion does not preclude coverage for losses incurred while participating in an HPDE event, and for such other declaratory relief as the Court may deem proper;

       g.      an order requiring that Defendants disgorge all funds wrongfully withheld from Plaintiffs and the Classes;

       h.      punitive, treble and/or multiple damages;

       i.      litigation costs and counsel fees;

       j.      administrative costs and expenses incurred in the class certification process; and

       k.      such additional relief as the Court may deem necessary and proper.

### JURY TRIAL DEMANDED

Plaintiffs herein demand a trial by jury of all issues triable.

**Dated: October 28, 2021**

**Respectfully submitted,**

BY:   */s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld, Esquire
Attorney I.D. No.: 84121
Richard Golomb, Esquire
Attorney I.D. No.: 42845
Kevin W. Fay, Esquire
Attorney I.d. No.: 308252
GOLOMB SPIRT GRUNFELD, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
rgolomb@golomblegal.com
kgrunfeld@golomblegal.com
kfay@golomblegal.com


Steven Gillman, Esquire
Attorney I.D. No. 33767
STEVEN GILLMAN, P.C.
10 Lake Center Executive Park
401 Route 73 North, Suite 204
Marlton, NJ  08053
E-mail:  sg@gillmanlegal.com
Phone:  215-925-9900 (PA Office)
Phone:  856-939-6600 (NJ Office)
Fax:  215-240-7983 (For PA & NJ Office)
www.gillmanlegal.com
*Attorneys for Plaintiffs and the Proposed Classes*