**United States District Court**
**Eastern District of Pennsylvania**

| | |
|---|---|
| ERIC SUBER and MARY LYNNE FORREY-SUBER, on their own behalf and on behalf of all others similarly situated, | Case No. 2:21-cv-4750-GAM |
| Plaintiffs, | |
| v. | |
| Liberty Mutual Insurance Group, Inc., d/b/a Liberty Mutual Insurance, Liberty Mutual Insurance Company, Safeco Insurance Company of America, and LM General Insurance Company, | |
| Defendants. | |

**[PROPOSED] ORDER**

And now, this _____ day of _____, 2022, upon consideration of Defendant Liberty Mutual Group, Inc.'s Motion to Dismiss Plaintiff's Complaint, Plaintiffs' Response in Opposition, and any reply thereto, it is hereby ordered that the motion is DENIED.

_____
The Honorable Gerald A. McHugh
United States District Judge

# United States District Court
# Eastern District of Pennsylvania

| | |
|---|---|
| ERIC SUBER and MARY LYNNE FORREY-SUBER, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Liberty Mutual Insurance Group, Inc., d/b/a Liberty Mutual Insurance, Liberty Mutual Insurance Company, Safeco Insurance Company of America, and LM General Insurance Company,<br><br>Defendants. | Case No. 2:21-cv-4750-GAM |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LIBERTY MUTUAL GROUP, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………………..1

II. RELEVANT FACTUAL BACKGROUND…....……………………….…………..….1

    A. Plaintiffs' Insurance Policy….……...…………..……….…………………1

    B. Plaintiffs' Complaint and Exhibits......………………………….……….2

III. ARGUMENT AND CITATION OF AUTHORITY…………………………….. 3

    A. This Court Has Personal Jurisdiction Over LMG……….………………. 3

    B. Plaintiffs Have Standing to Sue LMG……………….………………..… 6

        1. Standard of Review……………………………….……………… 6

        2. LMG's Facial Challenge is Meritless……..……..……………….. 8

        3. LMG's Factual Challenge is Meritless..……..………..………...10

    C. The Court Should Reject LMG's Alternative Argument that Plaintiffs Lack Standing to Bring Claims Outside of Pennsylvania…………….…………….. 11

IV. CONCLUSION………………………………………………………......……..………14

# TABLE OF AUTHORITIES

**Cases**

*Campbell v. Am. Int'l Group, Inc.*, 976 P.2d 1102, 1109 (Okla. Civ. App. 1999)………………10

*Craker v. State Farm Mut. Auto. Ins. Co.*, No. 11-225, 2011 WL 1671634, at *6 (W.D. Pa. May 3,2011) …………………………………………………………………………………………..10

*Dellaira v. Farmers Ins. Exch.*, 102 P.3d 111, 114 (N.M. Ct. App. 2004)………………………10

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009)…4

*Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013)………………………7

*Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 666-68 (E.D. Pa. 2015)……………………..8

*Enslin v. Coca-Cola Co.*, 739 F. App'x 91 (3d Cir. 2018)………………………………………..8

*Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 730–31 (Ariz. 1991)…………………..10

*Garnas v. Rimon*, No. 14-7246, 2015 WL 4578922, at *2 (E.D. Pa. July 30, 2015) (McHugh, J.)...5

*Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 829–30 (E.D. Pa. 2019)……….12

*Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)…………………………………...4

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)…………………..4

*Gotha v. U.S.*, 115 F.3d 176, 179 (3d Cir. 1997)………………………………………………...8

*Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 632 (3d Cir. 2017)…….7

*Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 95 (2d Cir. 2018)…………..14

*Lee v. AM. Nat. Ins. Co.*, 260 F.3d 997 (9th Cir. 2001)…………………………………………9

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)……………………………………………7

*Mayo v. TitleMax of Delaware*, No. 21-2964, 2022 WL 62533, at *6 (E.D. Pa. Jan. 4, 2022) (McHugh, J.) …..……………………………………………………………………………14

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009)…………………………6

*Mielo v. Steak'n Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018)……………………13

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)………………………………..4

*Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353 368 (3d Cir. 2015)…………………13

*Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014)……………………………12

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)…………………………..4

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999)……………………………………………13

*Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 464 (D.N.J. 2013)………………………………7

*Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 200 (3d Cir. 1998)………...……………3

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 770 (1st Cir. 2011)……………………………………………………………………………..13
*Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ………..………………………………………………………………………………7
*Talbert v. Am. Water Works Co.*, 528 F. Supp. 3d 471 (E.D. Pa. 2021)…………………………12
*The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir.2000)……………………………………..7
*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)…………………………..6
*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996)….3
*Warth v. Seldin*, 422 U.S. 490, 498 (1975)……………………………………………………...6
*Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 797–98 (10th Cir. 1995)………………………10
*Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009)……………………………..12

**Statutes**

42 Pa. C.S. § 5322(b)……………………………………………………………………………3
U.S. CONST. art. III, § 2…………………………………………………………………………….6
**Rules**
Fed. R. Civ. P. 12(b)(1) and 12(b)(2)

Fed. R. Civ. P 23(b)(3)

I.  **INTRODUCTION**

The crux of Defendant Liberty Mutual Group, Inc.'s ("LMG")[1] Rule 12(b)(1) and 12(b)(2) Motion to Dismiss[2] is that Plaintiffs lack standing and this Court lacks jurisdiction because LMG is a parent company that allegedly had nothing to do with issuing or underwriting the Subers' policy or "denying their claim." *See* Dkt. No. 11-1 at 3. However, at least one Liberty Mutual Defendant (LM General) has answered the Complaint and admitted that the Suber policy "was in effect at the date of the accident." Dkt. No. 12 ¶ 24. Two other Liberty Mutual Defendants have moved to dismiss, disclaiming any involvement with the Subers, but their denials are very much in doubt. In fact, both of these Defendants, Liberty Mutual Insurance Company ("LMIC") and Safeco Insurance Company of America ("Safeco"), were intimately involved in the investigation and wrongful denial of the Subers' claim. *See* Dkt. Nos. 1-4, 1-5, 1-7. At this juncture, Plaintiffs are entitled to have their allegations against LMG taken as true with all factual disputes drawn in their favor. Applying this standard, the Court should deny LMG's Motion to Dismiss. At a minimum, the Court could order jurisdictional discovery to go forward so that Plaintiffs can further investigate LMG's connection to the controversy.

II.  **RELEVANT FACTUAL BACKGROUND**

**A. Plaintiffs' Insurance Policy**

Plaintiffs had an automobile insurance policy with Liberty Mutual Insurance since at least August 2016. *See* Dkt. No. 1-1 at 3, 6. In 2021, Plaintiffs added the 2021 Porsche 718 to their

---

[1] LMG was incorrectly named in the Complaint as "Liberty Mutual Insurance Group, Inc., d/b/a Liberty Mutual Insurance."

[2] Defendants' Rule 12 motion was brought collectively by three Liberty Mutual entities. However, Plaintiffs are filing separate responses addressed to each of the three individual Defendants. The fourth Liberty Mutual entity named in the case, LM General Insurance Company ("LM General"), filed an Answer. *See* Dkt. No. 12.

1

policy. Dkt. No. 1-2 at 2. Part D of Plaintiffs' policy insures Plaintiffs for damage to their covered autos. Dkt. No. 1-1 at 17. LM General admits that the policy "was in effect at the date of the accident." Dkt. No. 12 ¶ 24.

Every page of the policy contains the signature logo for Liberty Mutual including Liberty's omnipresent, easily recognized Statue of Liberty brand logo. The closing salutation for the Suber policy reads "Thank you for insuring with Liberty Mutual. We appreciate your business." Dkt. No. 1-1 at 36. Liberty Mutual's online, print, and television marketing and advertising is ubiquitous in the Commonwealth of Pennsylvania. The last page of the Suber policy is signed by "Liberty Mutual Insurance Group." *See id.* at 37. Even the long form version of the Suber policy produced by LM General appears to show that the policy template was written for "**Liberty Mutual Insurance Group**." *See* Dkt. No. 12-2 at 77. Furthermore, the denial letter sent to the Subers on April 16, 2021 directs the recipient to visit www.libertymutual.com/privacy, Dkt. No. 1-5 at 2, which re-directs to another website that is affiliated with "Liberty Mutual Group."[3] The Subers reasonably believed they were insured by LMG. *See* Dkt. No. 1.

### B. Plaintiffs' Complaint and Exhibits

Plaintiffs filed their Complaint on October 28, 2021. Dkt. No. 1. The Complaint concerns the wrongful denial of benefits for an accident that occurred at a track in New Jersey on April 2, 2021. Dkt. No. 1 ¶ 24. The Complaint includes four claims: breach of contract; violation of Pennsylvania's unfair trade practices and consumer protection law ("UTPCPL") and other similar statutes nationwide; bad faith; and declaratory relief. *Id.* ¶¶ 57-87. Plaintiffs' Complaint asserts these claims against four Liberty Mutual entities: (1) LM General; (2) LMIC; (3) Safeco; and (4)

---

[3] https://www.**libertymutualgroup**.com/about-lm/corporate-information/privacy-policy (emphasis added) (last visited Feb. 2, 2022).

LMG. *See id.* ¶¶ 10-16. The Complaint refers to them collectively as "Defendants" or "Liberty Mutual." The Complaint's exhibits further specify each defendant's role in the scheme to defraud the Subers. *See, e.g.*, Dkt. Nos. 1-1, 1-4, 1-5, 1-7.

The Complaint alleges that Defendants, including LMG, have known for years that HPDE is not *Racing*. Dkt. No. 1 ¶ 40. The Complaint alleges that Defendants, including LMG, participated in the scheme to defraud the Subers. For example, LMG knew that it could have used clear policy exclusion language to delineate coverage for HPDE verses coverage for *Racing*, but it did not do so, and LMG nevertheless still systematically mischaracterized HPDE as being the same thing as *Racing*, resulting in wrongful denials of qualified claims, all in furtherance of the scheme. *Id.* ¶¶ 6-8, 29-45.

### III. <u>ARGUMENT AND CITATION OF AUTHORITY</u>

#### A. This Court Has Personal Jurisdiction Over LMG

The starting point for the Court in determining "whether personal jurisdiction can be asserted over a nonresident defendant" is the long-arm statute of the forum state. *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 200 (3d Cir. 1998). The Pennsylvania long-arm statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). Therefore, the Court must "look to federal constitutional doctrine to determine [LMG's] susceptibility to personal jurisdiction in Pennsylvania." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).

General personal jurisdiction exists when a person or company is "at home" in the forum state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).[4] Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotations and alterations omitted). When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

Specific personal jurisdiction is a three-part inquiry in this Circuit. The Court must find that (1) the defendant "purposefully directed [its] activities at the forum"; (2) the litigation arose out of or related to one or more of these activities; and (3) jurisdiction "comport[s] with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). In order to comply with due process, a defendant must deliberately target the forum state such that it "may reasonably anticipate being haled into court there." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001); *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009).

This Court has specific personal jurisdiction LMG. The Complaint alleges that LMG issued and underwrote the Plaintiffs' policy and also wrongfully denied Plaintiffs' claim. Dkt. No. 1 ¶¶ 6-8, 29-45. Specifically, the Complaint and its exhibits show that LMG was involved in the

---

[4] Since the Court's power is based on specific jurisdiction, Plaintiffs believe it is not an efficient use of time or judicial resources to fully brief the issue of general jurisdiction under the circumstances. Plaintiffs hereby do not waive their right to raise general jurisdiction and provide supplemental briefing, if the Court finds that such briefing would be helpful.

issuance of the policy, by virtue of the prominent display of the Liberty Mutual name and logo all over the policy itself. *See* Dkt. No. 1-1. The last page of the Suber policy is signed by "Liberty Mutual Insurance Group" *see id.* at 37, and the long form version of the Suber policy produced by LM General shows that the policy template was written for "Liberty Mutual Insurance Group." *See* Dkt. No. 12-2 at 77. In part, this case is about Defendants' failure to use clear policy exclusion language to delineate coverage for HPDE versus *Racing*, and the policy itself shows LMG played a role in the drafting of contract verbiage.

Furthermore, the closing salutation for the Suber policy reads "Thank you for insuring with Liberty Mutual. We appreciate your business." *Id.* at 36. Liberty Mutual's online, print, and television marketing and advertising is ubiquitous in the Commonwealth of Pennsylvania. Lastly, the denial letter sent to the Subers on April 16, 2021 directs the recipient to visit www.libertymutual.com/privacy, Dkt. No. 1-5 at 2, which re-directs to another website that is apparently affiliated with "Liberty Mutual Group." *See supra* fn. 3. The Subers reasonably believed they were insured by LMG. *See* Dkt. No. 1.

Thus, as clearly pled in the Complaint, and as certainly true when construing the current record in the light most favorable to Plaintiffs, LMG purposefully directed business activities at Pennsylvania and this litigation arose out of those activities, such that LMG should have reasonably anticipated the possibility of appearing in court in Pennsylvania to defend its activities. *See Garnas v. Rimon*, No. 14-7246, 2015 WL 4578922, at *2 (E.D. Pa. July 30, 2015) (McHugh, J.). In the specific context of the relationship between LMG and the Subers (and other Pennsylvania class members), LMG reached outside of Massachusetts to conduct business interactions with Pennsylvania citizens, thereby subjecting itself to Pennsylvania law regarding the consequences of those business interactions. *See id.* Moreover, Liberty Mutual's pervasive

advertising in the forum state constitutes another jurisdictional link. Therefore, under the totality of the circumstances before the Court as pled, exercising specific personal jurisdiction over LMG comports with fair play and substantial justice. *See id.* LMG's boilerplate and conclusory arguments to the contrary overlook the plain facts in Plaintiffs' Complaint. This Court has personal jurisdiction over LMG.

Further, dismissal at this stage of the pleadings against LMG is not the appropriate remedy. "If the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (*citing Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). The claims against LMG are clearly not frivolous, as there exist numerous ties between it and the allegations set forth in the Complaint. Here, even if the Court finds insufficient allegations to sustain personal jurisdiction at this time, the Court should allow jurisdictional discovery to allow further investigation of LMG's connection to the case.

**B. Plaintiffs Have Standing to Sue LMG**

*1. Standard of Review*

Article III of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies." U.S. CONST. art. III, § 2. At its core, "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To demonstrate standing to file suit, Plaintiffs must show (1) an "injury in fact" or an "invasion of a legally protected interest" that is "concrete and particularized," (2) a "causal connection between the injury and the conduct complained of," and

(3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).[5]

The Third Circuit has explained that "[t]he second requirement of Article III standing, causation, requires that 'the alleged injury-in-fact is causally connected and traceable to an action of the defendant.'" *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013) (*citing The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir.2000); *Lujan*, 504 U.S. at 560). The causation requirement of standing is "akin to 'but for' causation and . . . the traceability requirement [can be] met even where the conduct in question might not have been a proximate cause of the harm, due to intervening events." *See Edmonson*, 725 F.3d at 418; *see also Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 464 (D.N.J. 2013).

Because standing speaks to a Court's subject matter jurisdiction, it can be decided on a Rule 12(b)(1) motion to dismiss, where "a court must first determine whether the movant presents a facial or factual attack." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A facial attack is one that "attack[s] the sufficiency of the . . . complaint on the grounds that the pleaded facts d[id] not establish constitutional standing." *In Re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 632 (3d Cir. 2017). When a court analyzes a facial attack, it must "accept the Plaintiffs' well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the Plaintiffs' favor." *Id.* at 633. A factual challenge, by contrast, contests the validity of Plaintiffs' factual claims. *Id.* at 632. For a factual attack, the Court may consider evidence outside the pleadings, including affidavits,

---

[5] Defendants' Motion did not accurately cite the elements necessary to establish Article III standing. Dkt. No. 11-1 at 5 (improperly listing causation as two separate elements and omitting element #3, likelihood of redressability). LMG's Motion challenges only whether the second element, causation, is satisfied by the Subers' Complaint. *Id.*

depositions, and testimony, to resolve factual issues bearing on jurisdiction. *Gotha v. U.S.*, 115 F.3d 176, 179 (3d Cir. 1997).

LMG's Motion purports to raise both a facial and a factual attack. *See* Dkt. No. 11-1 at 5. Plaintiffs object that this is improper, but regardless, both challenges fail. LMG's failure to acknowledge the well pled facts contained in Plaintiffs' Complaint about LMG dooms both of its challenges. Furthermore, LMG's Motion does not challenge the Court's power to exercise jurisdiction pursuant to the Class Action Fairness Act, *see* Dkt. No. 1 ¶ 17, and LM General admits that "Plaintiffs seek to represent a putative class whose claims confer this Court with jurisdiction under the Class Action Fairness Act." Dkt. No. 12 ¶ 17. LMG's Motion should be denied.

2. *LMG's Facial Challenge is Meritless*

LMG's Motion claims that none of its conduct is fairly traceable to Plaintiffs' injury. Dkt. No. 11-1 at 6. As stated above, the Complaint alleges that LMG was involved in the issuance, underwriting, and administration of Plaintiffs' policy as well as the denial of Plaintiffs' claim. *See* Section III.A., *supra*. Its ubiquitous marketing and advertising presence in Pennsylvania is unassailable. It is axiomatic that plaintiff class representatives, such as here, will have shown a defendant's conduct is fairly traceable to their injury sufficient to confer standing when they can show direct harm arising from that defendant's specific conduct. *See Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 666-68 (E.D. Pa. 2015), *aff'd sub nom. Enslin v. Coca-Cola Co.*, 739 F. App'x 91 (3d Cir. 2018).

LMG's Motion cites a flurry of cases for the proposition that plaintiffs can only have standing against the "target" insurance company that issued their policy.[6] Dkt. No. 11-1 at 6 & n.3.

---

[6] The self-identified "target" in this case, LM General, already filed an Answer. *See* Dkt. No. 12.

However, these cases are non-precedential, distinguishable, and inapposite.[7] The cases cited by LMG are distinguishable because all of them actually involved "innocent by-stander" corporate entities that were related to the target only by corporate structure. In other words, all of the cases cited in LMG's Motion involved a pleading that contained at most, only bare bones allegations that were formulaic and conclusory against the so-called "innocent by-stander" companies. By contrast, the Subers' Complaint contains allegations about LMG's issuance of the policy and wrongdoing in relation to the scheme. *See* Dkt. No. 1; Section III.A., *supra.*

In this Circuit, it is not true that a plaintiff can only have standing against the insurance company that issued the policy. LMIC's Motion does not cite any Pennsylvania or Third Circuit case that supports application of this standing rule at the early Rule 12 stage.[8] Even the Ninth Circuit case cited by LMG, *Lee v. AM. Nat. Ins. Co.*, 260 F.3d 997 (9th Cir. 2001), is distinguishable because it did not involve a Rule 12 motion to dismiss and because the named plaintiff did not and could not specifically allege personal harm arising from the conduct of the separate Texas entity that was named as a defendant. 260 F.3d at 1002.

Moreover, a court will find standing against a parent company or other affiliated insurance company entities when the Complaint shows that such defendant was involved in the issuance of the policy or the scheme to defraud plaintiff and the class. *See Campbell v. Am. Int'l Group*, 976

---

[7] LMG's Motion failed to provide a full citation for its leading case on this issue: *Johnson v. Geico*, 673 F. Supp. 2d 244 (D. Del. 2009). Dkt. No. 11-1 at 6 (providing short cite only). *Johnson* is a non-precedential and unpersuasive Delaware District Court decision with a subsequent history that casts doubt on the premise that standing exists only against the issuer of an insurance policy. *See Johnson v. Geico*, 269 F.R.D. 406, 410-11 (D. Del. 2010) (denying motion to dismiss based on lack of standing raised by newly added Geico entity based on dispute over relationship with other Geico defendants).

[8] LMG cites two cases to support its argument that Plaintiffs lack standing to bring UTPCPL claims, but both are distinguishable for several reasons, including because they are Rule 56 summary judgment decisions based on facts uncovered in discovery. *See* Dkt. No. 11-1 at 7 n.4 (citing *Branche* and *Katz* cases).

P.2d 1102, 1109 (Okla. Civ. App. 1999) (reversing dismissal of bad faith claim against insurer's parent company where there was evidence that the parent played a significant role in handling insureds' claims); *Gatecliff v. Great Republic Life Ins.*, 821 P.2d 725, 730–31 (Ariz. 1991) (reversing summary judgment in favor of parent company that managed claims of subsidiary insurer); *Dellaira v. Farmers Ins. Exch.*, 102 P.3d 111, 114 (N.M. Ct. App. 2004) (reversing trial court's grant of motion to dismiss and stating "that an insurer cannot avoid or dissolve [its contractual duties] by delegating to third parties its essential function of making sure that claims for policy benefits are handled and determined fairly, promptly, and honestly"); *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 797–98 (10th Cir. 1995) (reversing summary judgment in favor of insurance claims administrator on a bad faith claim where the claims administrator "undertook many of the obligations and risks of an insurer"). *Cf. Craker v. State Farm Mut. Auto. Ins. Co.*, No. 11-225, 2011 WL 1671634, at *6 (W.D. Pa. May 3, 2011) ("How and why State Farm arrived at its decision to deny the Crakers' UIM claims goes to the heart of determining whether State Farm breached its contractual obligation . . . ."). Accordingly, the Court should reject LMG's facial challenge and deny its motion to dismiss.

### 3. *LMG's Factual Challenge is Meritless*

Without citing to any of the LMG-specific factual allegations of the Complaint, LMG's Motion argues that the Subers generally got the facts wrong when they identified the Liberty Mutual company entities at fault for the wrongful denial of their insurance claim. Dkt. No. 11-1 at 5-8, 13-14. Indeed, LMG attached two declarations to support the argument that LMG had nothing to do with the Subers' policy. *See* Dkt. Nos. 11-3, 11-4.

The Declarations claim that LMG did not "issue" or" underwrite" the Suber policy. However, the declarations do not deny that LMG was involved in drafting policy language,

providing claims handling guidance on such language, handling and/or investigating the Subers' claim for policy benefits, or denying coverage. The declarations do not deny that LMG knows about and participates in the Defendants' deceptive scheme to systematically mischaracterize HPDE as *Racing* and deny legitimate auto insurance claims. *See* Dkt. No. 1 ¶¶ 40, 44-45. The declarations do not deny that LMG receives premiums in exchange for a promise of coverage that LMG never intends to fulfill. *Id.* ¶¶ 22, 67-70. And even though the declarations attempt to deny that LMG "issued" the Suber policy, the claim itself is unsubstantiated and does not overcome Plaintiffs' allegations in the Complaint, nor does it define what *issuing* is meant in this context. It remains entirely plausible that LMG jointly issued the policy with LM General.

LMG argues that the Court should find that the "factual allegations" in the declarations "affirmatively demonstrate[s] that Plaintiffs lack standing," Dkt. No. 11-1 at 5. That is untrue. The Court should deny LMG's Motion to Dismiss.[9]

### C. The Court Should Reject LMG's Alternative Argument that Plaintiffs Lack Standing to Bring Claims Outside of Pennsylvania[10]

According to LMG, Plaintiffs lack standing "to bring claims outside of Pennsylvania"[11] because the events giving rise to Plaintiffs' action are confined to Pennsylvania and because this

---

[9] LMG's Motion is brought pursuant to Rules 12(b)(1) and 12(b)(2) only—the Motion raises no 12(b)(6) challenge to any specific claim. To the extent the Court has jurisdiction over LMG for any claim, the Court has jurisdiction over LMG for all claims. *See Rabin v. NASDAQ OMX PHLX LLC*, 182 F. Supp. 3d 220, 229-30 (E.D. Pa. 2016) (McHugh, J) (citing *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1088–89 (3d Cir. 1975)).

[10] In footnote 5 of Defendants' brief, LM General, the entity that has already answered the Complaint and admitted to issuing and underwriting the Subers' policy, attempts to "join this section." Dkt. No. 11 at 8 n.5. LM General is not a moving party and has not properly sought relief of any kind in this Motion. Plaintiffs object to this inappropriate, backdoor attempt to benefit from any ruling issued to other, moving Defendant entities. Plaintiffs intend to file a motion to strike.

[11] Although not framed as an alternative argument, it must be; otherwise LMG is admitting that jurisdiction is proper inside of Pennsylvania.

is a "question best addressed in a Rule 12(b)(1) motion." Dkt. No. 11-1 at 8-9 & n.6. LMG seeks to persuade the Court that the issue of standing for unnamed putative class members from outside Pennsylvania should be analyzed and decided by the Court now at the Rule 12 stage because otherwise it would be unfair to allow the Subers to embark on lengthy class discovery with respect to injuries arising in other states. *Id.* at 9 & n.6[12] (quoting *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014)). As a threshold matter, LMG makes no showing whatsoever that the alleged non-Pennsylvania discovery actually would be burdensome.

In addition, the Court is likely aware that there is a split of authority on this issue within the Eastern District of Pennsylvania. LMG favors the minority view contained in *In re Wellbutrin*, *In re Niaspan*, and more recently, *Talbert v. Am. Water Works Co.*, 528 F. Supp. 3d 471 (E.D. Pa. 2021), while Plaintiffs align with the majority view articulated by the Honorable Cynthia Rufe in *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 829–30 (E.D. Pa. 2019). After acknowledging the reasoning of *In re Niaspan*, Judge Rufe wrote:

> But other courts, including some in this Circuit, have taken a different view. In the case *In re Liquid Aluminum Sulfate Antitrust Litigation*, the District of New Jersey rejected the defendants' argument that the named plaintiffs "lack[ed] standing to bring state law claims under the laws of a state in which they do not reside." The Court explained that "class certification ... is 'logically antecedent' to the issue of standing. This is because class discovery will unveil the various members of the currently unknown class." Similarly, in the *In re Chocolate Confectionary Antitrust Litigation*, the Middle District of Pennsylvania found that because "the plaintiffs' attempt to represent the proposed class" gave rise to the question of whether they had standing to represent individuals from other states, the question of class certification was "'logically

---

[12] Rather than a jurisdictional challenge, this attack is more akin to an attempt to strike non-Pennsylvania class allegations.

12

> antecedent' to the standing concerns" and the Court declined to rule
> on the issue "until class certification proceedings."

*Id.*; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (holding that the question of Article III standing for absent class members may be held in abeyance until after the class certification determination in cases where there is an identity of issues and alignment of incentives between named plaintiffs and the rest of the putative class members); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 770 (1st Cir. 2011) (same).

In a recent decision in a putative class action asserting claims under the Americans with Disabilities Act, where the named plaintiffs sought to require that defendant "correct alleged ADA violations at more than the two restaurant locations where they claim[ed] to have actually experienced injury," the Third Circuit rejected the defendants' "invitation to insert Rule 23 issues into [its] inquiry on standing," and explained that "the standing inquiry must be limited to a consideration of the class representatives themselves, after which [the court] may 'employ Rule 23 to ensure that classes are properly certified.'" *Mielo v. Steak'n Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018) (quoting *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353 368 (3d Cir. 2015)). Similarly, the Second Circuit has explained that:

> Since class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place.

*Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 95 (2d Cir. 2018). The *Langan* Court held that "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing." *Id.* at 96.

The persuasive authority of the cases cited by LMG — *In re Wellbutrin*, *In re Niaspan*, and *Talbert* (Dkt. No. 11-1 at 9) — "is significantly limited by the cursory nature of the analysis

13

contained in those opinions." *See Mayo v. TitleMax of Delaware*, No. 21-2964, 2022 WL 62533, at *6 (E.D. Pa. Jan. 4, 2022) (McHugh, J.). The claims that out-of-state discovery would be burdensome are formulaic and conclusory. *See, e.g., Talbert*, 538 F. Supp. 3d at 482. For example, the Talbert decision assumed, without explanation, that *In re Wellbutrin* provided the requisite standard, with no reference to any of the controlling Third Circuit precedent (*Mielo* and *Neale*), or other persuasive cases (*In re Generic Pharms. Pricing Antitrust Litig.* and *Langan*), cited above. For these reasons, the Court should decline to follow the minority view. *Cf. Mayo*, 2022 WL 62533, at *6 (declining to follow authority cited by defendant based on robust analysis of legal landscape).

Accordingly, it is premature for the Court to evaluate the standing of unnamed putative class members at this early juncture. The Subers clearly have standing to sue LMG and the Court has jurisdiction over this controversy. As such, the Court should reject LMG's alternative argument seeking dismissal of Plaintiffs' non-Pennsylvania claims.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny LMG's Motion to Dismiss and enter an order in the form proposed.

| | |
|---|---|
| Dated: February 9, 2022 | Respectfully submitted, |
| | */s/ Kevin W. Fay* |
| | Kenneth J. Grunfeld, Esquire |
| | Kevin W. Fay, Esquire |
| | GOLOMB SPIRT GRUNFELD, P.C. |
| | 1835 Market Street, Suite 2900 |
| | Philadelphia, PA 19103 |
| | kgrunfeld@golomblegal.com |
| | kfay@golomblegal.com |

## CERTIFICATE OF SERVICE

I, Kevin Fay, Esquire, hereby certify that on this 9th day of February 2022, the foregoing Response in Opposition to Defendant LMG's Motion to Dismiss was filed via the Court's CM/ECF Filing System.

Respectfully submitted,

*/s/* Kevin W. Fay
Kevin W. Fay Esquire
*Attorney for Plaintiff*
