**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERIC SUBER et al., on their own behalf and on behalf of all others similarly situated | : : : : | |
| v. | : : | CIVIL ACTION NO.  21-4750 |
| LIBERTY MUTUAL INSURANCE GROUP et al. | : : : | |

---

**McHUGH, J.**                                                              **March 30, 2022**

**MEMORANDUM**

This is an action seeking class relief related to the denial of auto insurance claims subject to an exclusion related to racing events.  Defendants Liberty Mutual Insurance Company, Liberty Mutual Group,[1] and Safeco Insurance Company ("Moving Defendants")[2] move to dismiss the Complaint.  They contend that the Court lacks subject matter jurisdiction under Rule 12(b)(1) and personal jurisdiction under Rule 12(b)(2).  Alternatively, they argue that the Court lacks subject matter jurisdiction over the nationwide class claims. For the reasons below, I conclude that the Court does not have personal jurisdiction over two of the Moving Defendants, but that Plaintiffs may otherwise move forward with their claims against Liberty Mutual Insurance Company and LM General.[3]

---

[1] Plaintiffs filed suit against an entity named "Liberty Mutual Insurance Group Inc. d/b/a Liberty Mutual Insurance," which does not exist, and Defendants clarified that the correct defendant is likely Liberty Mutual Group Inc., which is the overall holding company of all the Liberty Mutual entities. *See* Def. Br. at 1 n.1, ECF 11-1.  Plaintiffs confirm that this is the entity they intended to name in their brief. Pltfs. LMG Resp. at 1 n.1, ECF 22.

[2] The fourth Defendant, LM General, has filed an Answer with the Court, ECF 12, but seeks to join the portion of the motion that seeks to dismiss the nationwide class claims.

[3]    In addition to their Responses, Plaintiffs have filed a Motion to Strike a part of Moving Defendants' brief that seeks to join Defendant LM General as party to the nationwide class argument, and also strike elements of Defendant LM General's Answer.  Plaintiffs' motion will be denied.

I.    **Background**

Plaintiffs Eric Suber and Mary Lynne Forrey-Suber filed a complaint seeking individual and class relief after their auto insurance claims were denied for an accident involving Mr. Suber's 2021 Porsche 718.  LM General Insurance Company ("LM General") concedes that it issued the auto insurance policy in question. Answer ¶ 18, ECF 12.  According to letters submitted with the Complaint from agents of LM General and its parent company, Liberty Mutual Insurance Company ("LMIC"), coverage was denied because the accident was subject to an exclusion for losses that occur when the vehicle is being used for "a. competing in; or b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay." Compl. Ex. E, ECF 1-5; Ex. G, ECF 1-7. Plaintiffs contend that participation in certain programs where individuals receive some classroom instruction and then are permitted to drive at high speeds on closed racetracks, which Plaintiffs define as "High-Performance Driving Education" courses, should not be subject to this exclusion because it is not a racing contest nor is it practice for a racing contest. Compl. ¶¶ 2-6. On the basis of this denial, Plaintiffs bring a class action alleging an illegal scheme to systematically deny otherwise eligible claims from accidents arising at High-Performance Driving Education courses. Compl. ¶¶ 6-9. Plaintiffs allege a breach of contract claim (Count I), violations of the Pennsylvania UTPCPL and other state consumer protection statutes (Count II), assert a bad faith claim (Count III), and seek a declaratory judgment as to the scope of the exclusion (Count IV).

In addition to filing suit against carrier LM General, the Subers have also filed suit against the parent company LMIC; the holding company which owns LMIC, Liberty Mutual Group Inc. ("LMG"); and a sister insurance company, also owned under the LMG/LMIC umbrella, Safeco Insurance Company of America ("Safeco"). These three Defendants all joined the Motion to

Dismiss. Regarding subject matter jurisdiction, Moving Defendants argue that Plaintiff is unable to establish causation because they did not issue the relevant policy and as a matter of law cannot be held liable for policy-related injuries. Def. Br. at 4-8, ECF 11-1. They also argue that Pennsylvania Plaintiffs lack standing to bring claims on behalf of a nationwide class. *Id*. at 8-10. Finally, they argue that the Court lacks personal jurisdiction over the Moving Defendants because they are foreign corporations that are not subject to the Court's general or specific jurisdiction because they are not "at home" here and because Plaintiffs' claims do not arise out of Defendants' contacts with Pennsylvania. *Id*. at 10-14.

Plaintiffs filed responses to the motion, where they point to various correspondence as well as a website to suggest that the individual Moving Defendants had some involvement with the denial of their claims such that dismissal would be inappropriate. Pltfs. LMIC Resp., ECF 20; Pltfs. Safeco Resp., ECF 21; Pltfs. LMG Resp., ECF 22.[4] With respect to the nationwide class issue, Plaintiffs argue that it would be inappropriate to make a class standing determination prior to a class certification motion. Pltfs. LMIC Resp. at 13-16; Pltfs. Safeco Resp. at 12-15; Pltfs. LMG Resp. at 11-14.

## II.   <u>Legal Standards</u>

A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack. A facial challenge contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (cleaned up). Where "a factual challenge, attacks the factual allegations underlying the complaint's assertion of jurisdiction, either

---

[4] Besides the differing factual allegations specific to the individual Defendants contained in each response, Plaintiffs' legal arguments are identical among the three separate filings.

through the filing of an answer or "otherwise present[ing] competing facts." *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). The nature of a factual challenge allows "a court [to] weigh and consider evidence outside the pleadings." *Constitution Party of Pa.*, 757 F.3d at 358 (cleaned up). When a factual challenge is made, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations" in a factual challenge. *Id*.

When a defendant has raised a challenge to personal jurisdiction pursuant to Rule 12(b)(2), the burden shifts to the plaintiff to establish the court's jurisdiction over that defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Because I am not holding an evidentiary hearing, Plaintiff need only establish a *prima facie* prima facie case of personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 316 (3d Cir. 2007). To meet that standard, Plaintiff must demonstrate "with reasonable particularity sufficient contacts between the defendant and the forum state," *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992), with the Court "required to accept the plaintiff's allegations as true, and … to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 457 (3d Cir. 2003).

## III.   Discussion

### A.   Defendants' Causation Arguments Are Improperly Raised Under Rule 12(b)(1)

Moving Defendants, none of which directly issued Plaintiffs' policy, argue that because they are not the issuing carriers for Plaintiffs' policy, they could not have caused Plaintiffs' injuries with the result that the Plaintiff lack standing to sue them for the denial of coverage. This argument

4

suffers from a conceptual flaw. "An analysis of standing generally focuses on whether the *plaintiff is the right party* to bring particular claims, not on whether the plaintiff *has sued the right party*. The latter question goes not to standing and jurisdiction but to the merits of the claims themselves." *Davis v. Wells Fargo*, 824 F.3d 333, 338 (3d Cir. 2016) (emphasis in original).  In *Davis*, the Third Circuit reversed a district court that granted a motion to dismiss for lack of subject matter jurisdiction where the contention was that the plaintiff improperly sued the parent company of plaintiff's subsidiary insurance carrier.  *Id.* at 346.  The Court of Appeals observed that the real gist of the motion to dismiss centered on a merits question: whether the plaintiff's "claims against [parent defendant] are actually without merit because [parent defendant] has done nothing wrong." *Id.* at 349.  It concluded that to address the argument as a jurisdictional question improperly "raises both the factual and legal burden on the plaintiff."  *Id.* Such a motion is properly brought pursuant to Rule 12(b)(6) for failure to state a claim, which Defendants have not done here.  For purposes of Rule 12(b)(1), Plaintiffs have alleged injury, causation, and remedy in that they were denied coverage, they were monetarily injured by that denial, and damages would constitute a remedy. Defendants' factual submissions regarding the Defendants' corporate structure and identity have no bearing on whether Plaintiffs have a right to bring an action related to the denial of their insurance claims.  Ex. A, ECF 11-3; Ex. B, ECF 11-4.  Therefore, both Defendants' facial and factual challenges to the Court's subject matter jurisdiction fail.

      B. <u>Personal Jurisdiction over the Individual Defendants</u>

Defendants argue that the Court lacks both general and specific personal jurisdiction. Plaintiffs effectively concede Defendants' arguments as to general jurisdiction but argue that specific jurisdiction exists. To establish specific jurisdiction, a defendant must have "certain minimum contacts … such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). This Circuit has distilled *International Shoe*'s standard, as later narrowed by other Supreme Court decisions, into a three-part test: "First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, … the exercise of jurisdiction [must] comport with fair play and substantial justice." *Sandy Lane Hotel Co.,* 496 F.3d at 317.   As the Supreme Court has emphasized, the second part of that test requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco County*, 137 S. Ct. 1773, 1781 (2017). The relevant issue here is whether any alleged conduct that Moving Defendants directed at Pennsylvania is connected to Plaintiffs' specific claims.

## 1.   The Legal Relevance of the Insurance Carrier

Although the Complaint itself manages an artfully pleaded silence as to the actual carrier of the insurance policy at issue, the documents attached to and relied on by the Complaint unequivocally identify LM General as the carrier and underwriter of Plaintiffs' insurance policy.[5] The Policy Declarations page submitted by Plaintiffs states that "LibertyGuard Auto Policy Declarations provided and underwritten by LM General Insurance Company, Boston, MA." Compl. Ex. A, Policy Declarations at 4 of 4, ECF 1-1.   The policy defines the term "we" in the policy to mean "the company *providing* this insurance." Compl. Ex. A, Policy at 1 of 17 (emphasis added). The Endorsement for the 2021 Porsche 718 added to the policy contains a functionally identical statement that identifies LM General as the provider and underwriter of the declarations. Compl. Ex. B, Endorsement at 5, ECF 1-2.   The letter from the Liberty Mutual claims department,

---

[5] While Defendants' affiant avers this fact, for the arguments regarding personal jurisdiction my review is limited to Plaintiffs' Complaint and its underlying documentation, construing all inferences in favor of the Plaintiffs, to see if Plaintiffs have made out a *prima facie* case for personal jurisdiction.

which provided the initial denial of Plaintiffs' claim, also identifies the "Underwriting Company" as "LM General Insurance Company." Compl. Ex. E, Denial Letter at 1, ECF 1-5. And finally, the letter denying renewal of the policy includes a sender block in the upper left corner of the page indicating that it was sent by "LM General Insurance Company."  Compl. Ex. F, Non-Renewal Notice at 1, ECF 1-6.  LM General in its Answer concedes as much.  Answer ¶ 18, ECF 12.

The documents that Plaintiffs attach to the Complaint include various references to the Moving Defendants that form the basis for Plaintiffs' allegations that the Moving Defendants bear some liability for the denial of their coverage, and these allegations will be addressed below.  But the references identified by the Plaintiffs do not plausibly or reasonably give rise to any inference, as expressly contended in Plaintiffs' three briefs, that the Subers could or would have believed that the Moving Defendants provided their insurance coverage.  Pltfs. LMIC Resp. at 2-4; Pltfs. Safeco Resp. at 3; Pltfs. LMG Resp. at 2-3.

At its core, though couched in terms of jurisdiction, Defendants' motion advances the argument that where "Plaintiffs' claims revolve around the terms of their policy and the coverage they were allegedly denied," only the carrier can be held liable as the but-for cause of Plaintiffs' injuries.  Defs. Br. at 7, ECF 11-1.  While it is a reasonable presumption that an insurer will bear primary responsibility for injuries that derive from decisions to deny claims based on policy exclusions, it is not clear to me from current law that a *per se* rule exists—or should exist—to shield entities related to the issuing insurer from liability, without regard to their possible involvement in a decision to issue a denial of coverage.  I am particularly reluctant to endorse a *per se* rule in the context of a parent-subsidiary relationship where a parent company may have financial incentives to orchestrate the actions of subsidiaries directly involved in administering the policy. And any analysis is obviously complicated by the modern disaggregation of business

functions into multiple legal entities with complicated and overlapping agents and agency relations.  In their briefs, the parties cite a plethora of cases that largely turn on the underlying factual allegations and do not represent binding precedent. Defs. Br. at 6-7, 6 n.1; Pltfs. Safeco Resp. at 8-9 (and similar in the other briefs). My inquiry is limited to whether the Moving Defendants have directed sufficient activities towards Pennsylvania related to Plaintiffs' claims, without resort to any special rules or immunities applying to insurance carriers.

      *2.   Claims Against Safeco*

      Plaintiffs fail to identify any conduct on the part of Safeco directed at Pennsylvania that is connected to the denial of Plaintiffs' insurance claims under their policy.  Safeco is not mentioned in any of their policy documents or otherwise elsewhere identified as a provider of their coverage. Plaintiffs make two factual allegations that they believe supports an inference that "[t]he Subers reasonably believed that Safeco was their insurance company and that Safeco denied their claim," but the allegations in the Complaint and attached exhibits do not plausibly or reasonably support such a belief.  Pltfs. Safeco Resp. at 3.

      First, Plaintiffs point to the original denial of coverage letter, on letterhead identifying Liberty Mutual Insurance's and Safeco Insurance's shared Claims Department. It is signed by a Senior Claims Resolution Specialist who identifies himself as an agent for both "Liberty Mutual Insurance and Safeco Insurance."  Compl. Ex. E.  But the fact that sister companies share a claims department does not create a plausible inference that a coverage decision specifically rendered as to a policy underwritten by one can presumptively be attributed to the other.  Such a presumption would ignore corporate formalities by holding that the mere use of a shared agent imputes liability to a legally distinct entity. More to the point here, the coverage denial letter Plaintiffs cite expressly identifies in the subject line that the claim being denied arose under a specific, identified policy

for which "LM General Insurance Company" was the "Underwriting Company." I am persuaded that the claims specialist's denial here is therefore only applicable to the policy issued by LM General and does not give rise to any basis for liability on the part of Safeco.

Second, Plaintiffs point out that the footer of the denial letter includes a link for the recipient "[t]o learn about Liberty Mutual's privacy policy go to www.libertymutual.com/privacy," and that link in turn includes sublinks to other carriers and lines of insurance, including "Liberty Mutual Personal Lines" and "Safeco Personal Lines." Pltfs. Safeco Resp. at 3. Plaintiffs make no attempt to explain the significance of this. Their theory of jurisdiction and liability appears to be guilt-by-association with an even weaker predicate connection. The fact that Liberty Mutual and Safeco have distinct privacy policies for their distinct insurance offerings actually supports the opposite inference: that Liberty Mutual and Safeco are separate entities that properly observe corporate formalities such that the conduct of one cannot be ascribed to the other simply because they share the same corporate owner which deemed it expedient to use shared web services for both entities. I therefore conclude that the Court lacks personal jurisdiction over Safeco because, even assuming the facts as alleged by Plaintiffs as true, Plaintiffs have not established "with reasonable particularity sufficient contacts between [Safeco] and the forum state" that are in any way connected to the claims at issue.

3. *Claims Against LMG*

Plaintiffs' claims against LMG, the holding company that owns LM General's parent, LMIC, fail for similar reasons. Plaintiffs argue that because LMG owns the trade name "Liberty Mutual," LM General's use of that brand and logo suffices as a conduit to extend liability to LMG.[6]

---

[6] Plaintiffs also raise the internet privacy policy page argument that I found unpersuasive as to Safeco and for those same reasons do not find it persuasive as to LMG.

Pltfs. LMG Resp. at 2.  Plaintiffs have not plausibly alleged any *conduct* on the part of LMG or any agents acting on behalf of LMG that might give rise to the injuries alleged or ground sufficient contacts to establish this Court's jurisdiction over them.  Plaintiffs' Complaint artfully excludes specifying the defendants responsible for any particular conduct such that no specific allegations are raised regarding conduct by LMG. And the exhibits attached provide no identifiable link to LMG besides the assertions, noted in Plaintiffs' brief, contending that LMG shares corporate branding with LM General. *See* Pltfs. LMG Resp. at 4-5 ("… show that LMG was involved in the issuance of the policy, by virtue of the prominent display of the Liberty Mutual name and logo all over the policy itself.").  But Plaintiffs' claims do not relate to Liberty Mutual's intellectual property, but rather the denial of coverage under an insurance policy.  I must therefore assess whether Plaintiffs have plausibly alleged any conduct on the part of LMG that is connected to that denial.  In a similar case in California filed against LMIC, where LMIC was not identified as the carrier of the policy or otherwise a party to the contract, a district court found that a renewal notice "that includes the Liberty Mutual Insurance logo and instructs that payment should be made to 'Liberty Mutual Insurance,'" was not sufficient to state a claim against LMIC.  *Victoria Fam. Ltd. Liab. Ltd. P'ship v. Ohio Sec. Ins. Co.*, No. 19-CV-2159-CAB-WVG, 2020 WL 376220, at *2 (S.D. Cal. Jan. 23, 2020).  Although that case was decided under Rule 12(b)(6), it supports my conclusion that mere use of a logo does not represent purposeful conduct sufficient to support specific jurisdiction.

Plaintiffs refer to the affidavits filed by the Moving Defendants, observing that they did "not deny that LMG was involved in drafting policy language, providing claims handling guidance on such language, handling and/or investigating the Subers' claim for policy benefits, or denying coverage." Pltfs. LMG Resp. at 10-11.  But it is Plaintiffs' burden to demonstrate sufficient

10

contacts with the forum related to the claim at issue; Defendants are not obligated to prove a negative. Plaintiffs' Complaint and the related exhibits fail to establish any plausible inference that LMG was meaningfully involved in activities directed at Pennsylvania related to Plaintiffs' claims. I therefore conclude that the Court lacks personal jurisdiction over LMG.

### 4. *Claims Against LMIC*

In the exhibits on which the allegations of their Complaint are based, Plaintiffs include documents reflecting two discrete communications made to Plaintiffs where individuals involved in the investigation and denial of their insurance claims expressly identified themselves as agents of "Liberty Mutual Insurance Company."[7] The exhibits include a transcript of the insurer's investigator interviewing Mr. Suber where, in the beginning of the call he identifies himself as "Special Investigator James Frisco with Liberty Mutual Insurance Company on claim 045227596." ECF 1-4. They further include a letter from attorney Steven Gillman to Plaintiffs sent to confirm the denial of coverage and explain the decision, where Mr. Gillman opens the letter by stating that "I am writing on behalf of Liberty Mutual Insurance Company ("Liberty Mutual") in response to your letters challenging Liberty Mutual's denial of coverage …" ECF1-7. This is sufficient evidence of contacts directed towards Pennsylvania connected with the denial of Plaintiffs' insurance claims to ground this Court's personal jurisdiction over LMIC.[8]

---

[7] Plaintiffs also raise the same internet privacy policy page argument and brand/logo argument that I found unpersuasive as to Safeco and LMG and for those same reasons do not find them persuasive as to LMIC.

[8] I also find that Plaintiffs have standing to bring a claim as to Count II under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") against LMIC. Defendants raise a statutory standing argument as to this claim, but much like Article III standing, statutory standing looks to the right of the plaintiffs to bring an action and not to whether the correct defendants were named. "[T]he statute unambiguously permits only persons who have purchased or leased goods or services to sue." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992). There is no dispute that Plaintiffs purchased an insurance policy through LM General, the subsidiary of LMIC, and have alleged an injury related to a denial

C.  Nationwide Class Claims

Defendants also argue that Plaintiffs' nationwide class claims must be dismissed for lack of Article III standing.[9]  Defs. Br. at 8-10; Defs. Reply at 11-15.  Defendants' standing objection here appears to be a facial challenge, focused on the allegations in the Complaint.  Plaintiffs have alleged that they hold a Pennsylvania auto-insurance policy and that the "racing exclusion" under which they were denied coverage is utilized nationwide.  Compl. ¶¶ 41-43.  They claim to represent a nationwide class of Liberty Mutual policyholders who were denied coverage under that exclusion, Compl. ¶ 50,  and contend that such denials violate state common law of contracts, state unfair trade practices laws, and state common law of bad faith, Compl. ¶ 54.  Defendants argue that although Plaintiffs may have standing to bring a Pennsylvania class action, they are unable to establish standing for related injuries suffered by residents of other states under other state laws. Defendants appear to presume the existence of a *per se* rule applied by some district courts that, in cases proposing a nationwide class based on state law causes of action, the court must dismiss for want of standing prior to class certification.  Having reviewed the case law in this area, I view the Third Circuit's decision in *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353 (3d Cir. 2015) as having rejected the existence of such a *per se* rule, particularly when *Neale* is read against the background of decisions from other circuits.  Under *Neale,* a plaintiff can meet their jurisdictional threshold at the pleadings stage by establishing their own standing and a sufficient stake in litigating the interests of the absent class members to ground an actual controversy.  In so holding,

---

of coverage under it.  This is sufficient to create statutory standing under the UTPCPL, with the question of LMIC's liability for its alleged conduct related to denial of the claim to be made on the merits.

[9] Defendant LM General, who has answered the Complaint, purports to join this section of the Moving Defendants' brief by means of a footnote.  Plaintiffs have moved to strike this effort as procedurally improper.  Because I am denying this request for relief, Plaintiffs' motion to strike is partially mooted and there is no prejudice for me to consider the nationwide standing argument as it applies to all remaining defendants.  I will more fully address the motion to strike in the next section.

I follow Judge Rufe's well-reasoned analysis in *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F.Supp.3d 814, 827-31 (E.D. Pa. 2019).

In *Neale*, the Third Circuit directly addressed the showing a named plaintiff has to make to establish standing to bring claims on behalf of a litigation class.  It built upon its analysis in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998), which had decided the same issue with respect to a settlement class.  The Third Circuit in *Neale* squarely held  that "unnamed, putative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class."  794 F.3d at 362.  Although a class representation must "possess the same interest and suffer the same injury as the class members … [t]hese 'interests' or 'injuries' are tested by the requirements of Rule 23." *Id.* at 368.  "Rather than shoehorn questions into an Article III analysis, the standing inquiry must be limited to a consideration of the class representatives themselves, after which we may employ Rule 23 to ensure that classes are properly certified." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018) (quoting *Neale*, 794 F.3d at 368) (cleaned up).

Applying a similar logic, the First, Second, Fourth, and Seventh Circuits have all specifically rejected the arguments presented by the Defendants here.  *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 48-51 (1st Cir. 2018); *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 93-96 (2d Cir. 2018); *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 133-134 (4th Cir. 2021); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).  I find the First Circuit's decision particularly instructive.  It ultimately held that there was standing for the plaintiffs "to bring claims on behalf of the class members whose claims arise under the laws of the twenty-two states within which no named plaintiff has either resided or purchased the

relevant … products during the class period." It did so only after formulating a more precise application of the standing doctrine identified in *Neale* to analyze the legal question before it. *In re Asacol Antitrust Litig.*, 907 F.3d at 48. Specifically, the First Circuit identified the key standing question as whether the plaintiff possesses "'such a personal stake in the outcome of the controversy as to assure concrete adverseness.'" *Id.* at 49 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). The Court found that this test was satisfied where "the claims of the named plaintiffs parallel those of the putative class members in the sense that, assuming a proper class is certified, success on the claim under one state's law will more or less dictate success under another state's law." *Id.*

Defendants' counter by arguing that "*Neale* considered whether 'all *[absent] putative class members* must have Article III standing' at the pleadings stage, not whether a named plaintiff must have standing to bring claims under different states' laws." Def. Reply at 14 (quoting *Neale*, 794 F.3d at 358).[10] But this misunderstands *Neale*. The named Plaintiffs themselves would be

---

[10] Without ever stating it explicitly, Defendants seem to be requesting the Court to make an exception to *Neale* and hold that class standing challenges related to claims brought under laws of states where Plaintiffs do not reside and are not injured are *per se* non-justiciable. But the district court cases that Defendants principally rely on in their motion are not persuasive. Two of the cases predate *Neale*. *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009); *In re Niaspan Antitrust Litig.*, 42 F.Supp.3d 735 (E.D. Pa. 2014). The other cases were decided after *Neale* but did not address it. *Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp.*, No. CV 16-665, 2017 WL 4235773 (E.D. Pa. Sept. 25, 2017); *Talbert v. Am. Water Works Co., Inc.*, 538 F.Supp.3d 471 (E.D. Pa. 2021).

Although Defendants fail to cite the opinion in either of their briefs, Judge DuBois did in fact reconsider the issue in *In re Niaspan* after *Neale* was decided. *In re: Niaspan Antitrust Litig.*, No. 13-MD-2460, 2015 WL 8150588 (E.D. Pa. Dec. 8, 2015). He reaffirmed his decision, holding that *Neale* did not disturb his analysis, by focusing the standing inquiry not on the type of injury suffered by the named plaintiff, but on the relation between the plaintiffs and the legal claims asserted, which were narrowly understood as specific statutory causes of action. *Id.* at *3. I am not persuaded that *Neale* dictates such a granular understanding of "claims" in the context of class representative standing analysis. As the Second Circuit has explained, "[i]n reality, it rarely happens that the circumstances surrounding one plaintiff's claim end up being identical to the claims of another putative class member, let alone all of the others," which is why Rule 23 is the appropriate mechanism through which to address such questions. *Langan*, 897 F.3d at 94. And in *Neale* itself, the Third Circuit refused to "shoehorn" differences between legal causes of action brought under different state laws "into an Article III analysis" and instead "continue[d] to employ

members of the putative nationwide class and they have made a showing of justiciability as to their claims.  Plaintiffs have no burden at the outset to establish standing for unnamed class members from all fifty states in order to sustain a nationwide class, hence *Neale*'s holding that Article III standing does not need to be established for absent class members, as to require so would be "inconsistent with the nature of an action under Rule 23." *Neale*, 794 F.3d at 367.  While Plaintiffs' Complaint lacks some specificity as to the consumer protection laws of other states being violated, the nature of Plaintiffs' claims as to breach of contract, unfair trade practices, and bad faith suggest that the "success on the claim under one state's law will more or less dictate success under another state's law" sufficient to ground representative class standing.  *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49-50 (1st Cir. 2018).  The class certification motion will provide Defendants ample opportunity to contest the adequacy of named Plaintiffs to represent the class, the typicality of their claims, and the predominance of common questions of law or fact, with the burden of persuasion on the Plaintiff to make such showings.  Further, given the highly specific nature of the racing exclusion at issue, I anticipate that the Rule 16 conference and the additional grant of discretion to this Court under Rule 23(d) to manage the class action will prove salutary to ensuring that the scope of discovery does not prove overly burdensome.

    D.  <u>The Motion to Strike</u>

    Plaintiffs also move to strike portions of the Answer on the basis that Defendant LM General's affirmative defense raising any defenses available under the contract and a request for attorneys' fees are "vague and conclusory."  "[S]triking a pleading is a 'drastic remedy' to be used sparingly because of the difficulty of deciding a case without a factual record."  *BJ Energy, LLC*

---

Rule 23 to ensure that classes are properly certified." 794 F.3d at 368.  I am bound to follow *Neale* and conclude that Defendants' position is inconsistent with its precepts.

*v. PJM Interconnection, LLC,* Nos. 08–3649, 09–2864, 2010 WL 1491900, at *1 (E.D. Pa. Apr. 13, 2010).

I find no reason to grant relief. The legal sufficiency of Defendant's affirmative defenses and request for attorneys' fees should be adjudicated on the merits based upon a review of the facts at issue in the case. Plaintiffs have the relevant contracts in hand and suffer no prejudice from the Defendant's reliance on such contracts to vindicate their own legal rights.[11]

## IV.    Conclusion

For these reasons, the Defendants' motion to dismiss will be granted in part and denied in part and Plaintiffs' motion to strike will be denied. The Complaint will be dismissed against Defendants Safeco Insurance Company of America and Liberty Mutual Group. An appropriate order follows.

  /s/ Gerald Austin McHugh
United States District Judge

---

[11] Plaintiffs have moved to strike footnote five from Defendant's motion, principally on the ground that it improperly attempts to join LM General to the motion in violation of Local Rule 7.1, and for other highly technical reasons. This portion of the motion will be denied as moot.